PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEELITE INTERNATIONAL U.S.A., INC., | ) ) | CASE NO. 4:25-CV-02659 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y.  PEARSON |
| *v.* | ) | |
| | ) | |
| ANFORA INTERNATIONAL, S. *de* R.L. *de* C.V., | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | [Resolving ECF No. 15] |
| Defendant. | ) | |

## I. INTRODUCTION

Pending is Defendant Anfora International, S. *de* R.L. *de* C.V.'s Motion to Dismiss (ECF No. 15) for lack of personal jurisdiction and improper venue.  As an alternative to dismissal, Defendant asks the Court to transfer the case to Texas.  The Motion is fully briefed (ECF Nos. 15, 21, 25), ripe for resolution, and denied in its entirety for the reasons that follow.

## II. BACKGROUND

### A. *History*

Plaintiff Steelite International U.S.A., Inc. is an American corporation that manufactures and supplies dinner and kitchenware to commercial consumers like hotels, restaurants, casinos, and cruise lines.  *See* ECF No. 1 at PageID ##: 2, 3  ¶¶ 6, 16.  Its headquarters are in Youngstown, Ohio, and its customers are worldwide.  *See* ECF No. 1 at PageID #: 2, ¶ 6. Defendant is a foreign corporation based in Hidalgo, Mexico.  *See* ECF No. 15 at PageID #: 149. Like Plaintiff, it makes and sells consumer products for the hospitality industry.  *See* ECF No. 1

(4:25-CV-02659)

at PageID #: 4, ¶ 18.  Although it has no offices in the United States, its American subsidiary—Anfora U.S.A.—does business in Texas.  *See* ECF No. 15 at PageID #: 149.

For the last two decades, Plaintiff was the exclusive distributor of Defendant's products in the United States.  *See* ECF No. 1 at PageID #: 4, ¶ 18.  That relationship was governed by two interrelated agreements.  The first, a "Distribution Agreement" dated May 27, 2004, cemented the Parties' partnership and made Plaintiff the exclusive distributor of Defendant's products in America.  *See* ECF No. 15–1 at PageID #: 175–76.  The Distribution Agreement governed, *inter alia*, terms of sale, pricing, warranties, and Plaintiff's use of Defendant's tradenames and trademarks.  It expressly prohibited Plaintiff from filing, registering, or using any trademark or tradename similar to Defendant's marks without prior written consent.  *See* ECF No. 15–1 at PageID ##: 178–79.  It also contained an arbitration clause providing that all disputes "arising out of" or "in connection with" the agreement would be settled *via* arbitration in New Jersey.  *See* ECF No. 15-1 at PageID #: 181.

The Distribution Agreement ended on December 31, 2024.  *See* ECF No. 15–1 at PageID #: 171, ¶ 1.  But "in an effort to avoid litigation[,]" the Parties agreed to "revive their business relationship under the 2004 Distribution Agreement" *via* a new contract (the "Letter Agreement") on June 25, 2025.  The Letter Agreement bound the Parties to a six-month "Extension Period" through November 1, 2025, during which Plaintiff would "continue to present Defendant's products at industry shows, in showrooms, and to relevant customers in the same manner as has been conducted over the past twenty-plus years and comply with all terms of the [2004] Distribution Agreement."  ECF No. 15–1 at PageID #: 171, ¶¶ 1, 2.  Finally, the Parties agreed that "upon the expiration of the Extension Period . . . [Defendant] shall continue to offer Products . . . to [Plaintiff] on a non-exclusive basis for an additional six-month period until

2

(4:25-CV-02659)

April 1, 2026."  ECF No. 15–1 at PageID #: 171, ¶ 2.  After that date, "any additional . . .

purchases would be subject to a new distribution agreement between the Parties."  ECF No. 15–1

at PageID #: 171, ¶ 2.  The Letter Agreement also replaced the original arbitration and resolution

provisions with a forum-selection clause providing that all disputes "arising out of" or "relating

to" the new contract would be subject to the jurisdiction of state and federal courts in Dallas,

Texas.  *See* ECF No. 15–1 at PageID #: 172.

Consistent with the Letter Agreement, the Parties' professional partnership ended on

April 1, 2026 and, although Plaintiff retains rights to purchase Defendant's products, the two are

now direct competitors.  *See* ECF No. 1 at PageID #: 4, ¶ 19.  Prior to expiration, Plaintiff

designed a new dinnerware pattern called "Paloma," depicted below:



*See* ECF No. 1–1, Exhibit A.  Plaintiff finalized the Paloma design on July 18, 2025, debuted it

publicly on October 27, 2025, filed a federal copyright application on December 3, 2025, and

filed a federal trademark application on December 8, 2025.  *See* ECF Nos. 1 at PageID ##: 5–6,

¶¶ 24–29, 1–2, Exhibit B, 1–3, Exhibit C.  The copyright was approved on December 4, 2025

under Registration Number VA 2-469-943 for a two-dimensional artwork called  "Steelite Plate

3

(4:25-CV-02659)

Design – Paloma 1."  *See* ECF Nos. 20 at PageID #: 208, ¶ 8, 20–1, Exhibit D at PageID #: 244-45.

Just weeks prior, on November 13, 2025, Defendant began marketing and selling an aesthetically similar product line called "Colección Paloma," depicted below:



*See* ECF No. 1–4, Exhibit D.  Plaintiff alleges that Defendant did not sell any dinnerware with the Colección Paloma design before the public debut of Plaintiff's Paloma design in October 2025.  *See* ECF No. 1 at PageID #: 7, ¶ 42.  On November 21, 2025, Defendant filed an application with the United States Patent and Trademark Office seeking registration of the word mark "PALOMA" for "[d]innerware, namely, plates" and claiming international "use in commerce."  *See* ECF Nos. 1 at PageID #: 8, ¶ 44, 1–5, Exhibit E.

Plaintiff's position is that Defendant "filed the trademark application solely in an effort to block [Plaintiff] from using and obtaining registration of the Paloma Mark . . . in bad faith and without a *bona fide* intent to use the Paloma name as a trademark on its own products."  *See* ECF No. 1 at PageID #: 8, ¶ 46–47.

4

(4:25-CV-02659)

## B. *Proceedings*

On December 8, 2025, Plaintiff sued Defendant in the United States District Court for the Northern District of Ohio on six causes of action.  *First*, for copyright infringement under 17 U.S.C. § 501 *et seq.*  *See* ECF No. 1 at PageID ##: 9–11, ¶¶ 52–63.  *Second*, for false designation of origin, trademark infringement, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125.  *See* ECF No. 1 at PageID ##: 11–12, ¶¶ 64–75.  *Third*, for violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165 *et seq.*  *See* ECF No. 1 at PageID ##: 12–14, ¶¶ 76–85.  *Fourth*, for common law unfair competition.  *See* ECF No. 1 at PageID ##: 14–15, ¶¶ 86–97.  *Fifth*, and asserted alternatively, for unjust enrichment.  *See* ECF No. 1 at PageID ##: 15–16, ¶¶ 98–102.  And *sixth*, for declaratory judgment under 28 U.S.C. § 2201.  *See* ECF No. 1 at PageID ##: 16–18, ¶¶ 103–14.  Plaintiff seeks to permanently enjoin Defendant from using the Paloma name and design, have all infringing products destroyed, monetary damages (including disgorgement of profits, statutory and actual damages, treble damages for willful infringement, punitive damages, and attorney's fees), and a declaratory judgment that Defendant has no trademark rights to the Paloma name.  *See* ECF No. 1 at PageID ##: 18–20.  Plaintiff also seeks a preliminary injunction to

> [enjoin] Defendant . . . from manufacturing, marketing, selling, or otherwise using any products bearing [Plaintiff]'s Paloma design or trademark, from prosecuting U.S. Trademark Application Serial No. 99/510,808 for the mark "Paloma," and from engaging in any conduct that infringes [Plaintiff]'s trademark, copyright, or other rights in the Paloma design, pending final resolution of this action.

ECF No. 4 at PageID #: 69.

Because Defendant is a Mexican corporation, the Court granted Plaintiff's motion for alternative process and permitted service *via* email on Defendant's domestic counsel.  *See* ECF Nos. 6, 7, 8.  Defendant appeared in January 2026 and twice sought extensions to respond to the

5

(4:25-CV-02659)

Complaint (which the Court granted in part, allowing 15 days each time).  *See* ECF Nos. 12, 13, 14.  On March 12, 2026, Defendant entered its Answer and the instant Motion to Dismiss supported by a declaration from its director, Juan Lorenzo.  *See* ECF Nos. 15, 16.  On March 17, 2026, the Court set a consolidated briefing schedule for both the jurisdictional and injunctive motions.  *See* ECF No. 17.  Plaintiff responded on March 30, 2026, and Defendant replied a week later.  *See* ECF Nos. 21, 25.

### III. DISCUSSION

Defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3) and, in the alternative, to transfer to the Northern District of Texas under 28 U.S.C. § 1404(a).  The Court addresses each in turn.

### A. *Personal Jurisdiction*

Personal jurisdiction is a federal court's authority to bind a party to its decisions based on that party's relationship to the forum state.  *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1877); *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262 (2017).  Exercising jurisdiction over a non-resident defendant must not offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945); *Freidman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).  In federal question cases, personal jurisdiction requires service amenability under the forum state's long-arm statute and compliance with constitutional due process.  *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Because Ohio's long-arm statute is indeterminately coterminous with federal constitutional limits, a plaintiff generally must satisfy both prongs independently and on its face, *i.e.*, *prima facie*.[1]  *See*

---

[1] Whether Ohio's long-arm statute extends to due process limits following a 2021 state amendment has divided courts in the Sixth Circuit.  *Compare Angel's Dream, LLC v. Toledo Jet*

6

(4:25-CV-02659)

*Air Prods. & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Schneider,* 669 F.3d at 699.  Ohio Rev. Code § 2307.382 permits jurisdiction over nonresidents on enumerated grounds, including "transacting business," a term broad enough to encompass negotiations and dealings wholly or partly concluded.  *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990); *Reynolds v. Intl. Amateur Athletic Fedn.*, 23 F.3d 1110, 1116 (6th Cir. 1994);

The constitutional due process inquiry turns on whether the defendant purposefully directed its activities at the state and whether the plaintiff's claims arise out of or relate to those contacts.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  When due process is concerned, courts recognize two forms of personal jurisdiction: general and specific.  *See Bristol-Myers Squibb*, 582 U.S. at 255.  General jurisdiction permits suing on any claim in the place where a defendant is domiciled or, for a business, where it is "essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Specific jurisdiction requires that the claim "arise out of or relate to the defendant's contacts with the forum state."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  To establish specific jurisdiction, Sixth Circuit courts apply a three-part test first pronounced in *Southern Machine Company v. Mohasco Industries*: (1) whether the defendant purposefully availed himself of the

---

*Ctr., LLC*, 721 F. Supp. 3d 601, 610 (N.D. Ohio 2024) (finding amendment extended Ohio's long-arm statute to the extent of due process) *with Carbone v. Kaal*, 744 F. Supp. 3d 835, 838 (S.D. Ohio 2024) (finding amendment did not collapse Ohio's long-arm statute with the due process analysis).  The Court declines to resolve that conflict because Defendant's conduct falls *prima facie* within Ohio's long-arm statute on multiple independent grounds, including transacting business in Ohio, contracting to supply goods or services in Ohio, and causing tortious injury in Ohio through out-of-state acts while regularly conducting business and deriving substantial revenue from goods consumed therein.  *See* Ohio Rev. Code § 2307.382(A)(1), (2), (4), (6).

(4:25-CV-02659)

forum state by creating a substantial connection or exploiting its market; (2) whether the cause of action arises from or is related to those contacts; and (3) whether the defendant's connection to the state makes jurisdiction reasonable, considering the burden on the defendant, the forum state's interests, and the plaintiff's interest in relief.  *See Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012) (citing 401 F.2d 374 (6th Cir. 1968)).  Satisfaction of the first two prongs gives rise to an inference that the third is met.  *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

Under Fed. R. Civ. P. 12(b)(2), a defendant may move to dismiss a lawsuit for lack of personal jurisdiction.  To counter, the plaintiff bears the burden of showing that personal jurisdiction exists.  *See Theunissen v. Matthew*, 935 F.2d 1454, 1458 (6th Cir. 1991).  That burden "varies depending on how the district court handles the jurisdictional issue[.]"  *Straight v. LG Chem, Ltd.*, 640 F. Supp. 3d 795, 801 (S.D. Ohio 2022).  When—as here—a court resolves a motion on written submissions alone, the plaintiff need only make a *prima face* showing of personal jurisdiction.  *See Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).  This bar can be met by "establishing[,] with reasonable particularity[,] sufficient contacts between [the defendant] and the forum state to support jurisdiction."  *Neogen Corp. v.  Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

While a court "may consider the defendant's undisputed factual assertions[,]" all *disputed* facts must be construed in the plaintiff's favor.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  Dismissal is proper "only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction."  *CompuServe*, 89 F.3d at 1262.  Yet the plaintiff cannot rest on the pleadings alone.  He must—by affidavit or otherwise—offer *specific* evidence in support of personal jurisdiction.  *See*

8

(4:25-CV-02659)

plaintiff must establish the propriety of personal jurisdiction as to each individual claim. *See SimCoke Energy, Inc. v. MAN Ferrostaal Aktiengesellchaft*, 563 F.3d 211, 219 (6th Cir. 2009); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1351 at 299 n. 30 (2004). The relationship between a corporate defendant and the forum must be such that it is reasonable to require the corporation to defend against a particular claim where it is brought. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

\* \* \*

Defendant contends the Court lacks both general and specific personal jurisdiction to render judgment against it. On general jurisdiction, it argues it cannot be "at home" in Ohio as a foreign entity headquartered in Mexico with no Ohio offices, sales representatives, or operations. *See* ECF No. 15 at PageID ##: 149, 151. On specific jurisdiction, it argues it never sold, advertised, or distributed its Colección Paloma products in Ohio, that its website serves only Mexican customers, and that any Ohio contacts arose solely from Plaintiff's presence in Ohio, rather than Defendant's deliberate exploitation of the Ohio market under *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). *See* ECF No. 15 at PageID ##: 153–57. Defendant further argues that litigating in Ohio would be unduly burdensome; that Plaintiff cannot invoke the Parties' Supply Letter contract to establish jurisdiction while simultaneously disclaiming its Texas forum-selection clause; and that a January 13, 2026 Youngstown meeting of the Parties' CEOs is irrelevant because it occurred after litigation commenced. *See* ECF Nos. 15 at PageID ##: 157–58, 25 at PageID ##: 349–61.

Plaintiff retorts that personal jurisdiction is established under both Ohio's long-arm statute and constitutional due process, contending the Court must accept its well-pled facts as true and may not consider Defendant's conflicting facts or controverting affidavits at the pleading

9

(4:25-CV-02659)

stage.  *See* ECF No. 21 at PageID ##: 261, 263. On purposeful availment, Plaintiff argues Defendant deliberately exploited the Ohio market for over two decades through its exclusive distribution relationship with an Ohio-headquartered company, directed tortious conduct toward Ohio while knowing the Paloma brand was conceived and developed there, and made repeated executive-level contacts with Ohio—including a January 13, 2026 meeting at Plaintiff's Youngstown headquarters.  *See* ECF No. 21 at PageID ##: 266–68.  Alternatively, Plaintiff argues that jurisdiction is proper under Fed. R. Civ. P. 4(k)(2).  To support this argument, Plaintiff points to Defendant's own representations that American customers purchased and received Paloma-branded products.  These representations, Plaintiff says, directly contradict Defendant's claim that its website is limited to Mexican consumers.  *See* ECF No. 21 at PageID ##: 272–74.

\* \* \*

The Court finds Plaintiff has made a *prima facie* showing that Defendant's conduct falls within Ohio's long-arm statute on several grounds, including transacting business in Ohio, contracting to supply goods or services in Ohio, and causing tortious injury in Ohio through out-of-state acts while regularly conducting business or deriving substantial revenue from goods consumed in Ohio.  *See* Ohio Rev. Code § 2307.382(A)(1), (2), (4), (6).  Defendant's decades-long distribution relationship with Plaintiff constitutes "transacting business" under the statute's broad construction, *see Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006), and its intentional (alleged) exploitation of Plaintiff's proprietary Paloma design—carried out with knowledge that Plaintiff is headquartered in Ohio and that the resulting harm would be felt most prominently therein—independently suffices for jurisdiction to blossom.

10

(4:25-CV-02659)

The Court also finds that all three prongs of the Sixth Circuit' specific jurisdiction test are satisfied.  *See Mohasco Industries, 401 F.2d at 381*.  On purposeful availment, Defendant's twenty-plus-year exclusive distribution relationship with an Ohio-based company, its representatives' repeated physical presence in Ohio, and its ongoing correspondence with Plaintiff in Ohio constitute paradigmatic purposeful availment.  This distinguishes the instant case from *Calphalon, 228 F.3d at 718* because here Ohio was the operational nexus of the Parties' relationship, not merely an incidental location to their arrangement.  *See Air Prods., 503 F.3d at 551*; *MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 901 (6th Cir. 2017)*; ECF No. 21 at PageID ##: 283–86.  On the arising-from prong, Plaintiff's claims relate directly to Defendant's Ohio-centered commercial operations—the backdrop against which Defendant allegedly copied intellectual property conceived, developed, and launched in Youngstown.  *See CompuServe, 89 F.3d at 1267*; ECF No. 21 at PageID ##: 283–86.  On reasonableness, having voluntarily and repeatedly availed itself of Ohio's benefits for over two decades, Defendant cannot now claim that litigating in the state offends fair play and substantial justice, particularly given Ohio's strong interest in protecting the intellectual-property rights of its own corporations.  *See CompuServe, 89 F.3d at 1268*.  Jurisdiction is alternatively authorized for Plaintiff's claims under the Copyright Act, 17 U.S.C. § 501 and Lanham Act, 15 U.S.C. § 1125 in comportment with due process.  *See Lyngaas v. Curaden AG, 992 F.3d 412, 422 (6th Cir. 2021)*.

## B. *Venue*

Venue in federal civil actions is governed by 28 U.S.C. § 1391(b), which permits filing a lawsuit in the place where the defendant resides, where a substantial part of the events giving rise to the claim occurred, or—if no other district is available—where any defendant is subject to

11

(4:25-CV-02659)

personal jurisdiction. *See* 28 U.S.C. § 1391(b)(1)–(3); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).

When a court resolves a Fed. R. Civ. P. 12(b)(3) challenge on written submissions alone, the plaintiff need only make a *prima facie* showing that venue is proper, as the chosen district need not be the *most* convenient, but only one in which a substantial part of the relevant events occurred. *See Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 618–19 (6th Cir. 2025); *Smith v. Swaffer*, 566 F. Supp. 3d 791, 803 (N.D. Ohio 2021). Venue is generally proper where transactions, negotiations, or solicitation of business took place and where the effects of the alleged misconduct are felt. *See Emerman v. Fin. Commodity Invs., LLC*, No. 1:13-CV-2546, 2014 WL 12588501, at *5 (N.D. Ohio July 22, 2014). For copyright claims specifically, venue is independently authorized under 28 U.S.C. § 1400(a) in any district where the defendant resides or may be found which, for a corporate defendant, means any district in which it is subject to personal jurisdiction. *See Symbolstix, LLC v. Smarty Ears, LLC*, 152 F. Supp. 3d 1027, 1037 (N.D. Ohio 2015).

If venue is improper, a court must dismiss or, in the interest of justice, transfer the case to a district where it could have been brought. *See* 28 U.S.C. § 1406(a); *King v. Forest River, Inc.*, No. 1:16-CV-590, 2016 WL 3544745, at *2 (N.D. Ohio June 29, 2016). Yet the existence of a forum-selection clause has no bearing on whether a case falls within the categories of 28 U.S.C. § 1391(b), and a case filed in a statutorily permissible district cannot be dismissed under Fed. R. Civ. P. 12(b)(3) based solely on such a clause. When a forum-selection clause is at issue, the relevant question is whether the clause applies to the claims asserted *ab initio*. *See Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 697 (S.D. Ohio 2013).

\* \* \*

12

(4:25-CV-02659)

Defendant moves to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), arguing that no substantial part of the events giving rise to Plaintiff's claims occurred in Ohio under 28 U.S.C. § 1391(b)(2).  *See* ECF No. 15 at PageID ##: 158–59.  Specifically, Defendant contends the conduct underlying the Complaint consists solely of its listing of the Colección Paloma design on its Mexico-only website and its filing of a United States trademark application—neither of which bears any relationship to Ohio—and that Plaintiff's venue allegations are conclusory and unsupported by fact.  *See* ECF No. 15 at PageID #: 159.  In reply, Defendant asserts that no events related to the Paloma design took place in Ohio and that Plaintiff did not plead any Ohio-connected activities related to the design until after the action had been filed. *See* ECF No. 25 at PageID #: 361.  Defendant further argues the case must be transferred to Texas because the Letter Agreement's forum-selection clause governs the claims asserted; that Plaintiff's choice of forum therefore merits no weight; and that the transfer factors weigh in its favor.  *See* ECF No. 25 at PageID ##: 358–59.

Plaintiff opposes dismissal, contending venue is proper under 28 U.S.C. §§ 1391(b)(2), (3), and 1400(a), and that Defendant's Motion erroneously demands detailed facts regarding venue at the pleading stage.  *See* ECF No. 21 at PageID ##: 263, 275.  On the merits, Plaintiff argues that a substantial part of the relevant events occurred in Ohio because the Paloma design was conceived, developed, and publicly launched from Plaintiff's Youngstown headquarters; the commercial relationship through which Defendant placed its products into the American market was centered in Ohio (including through Plaintiff's "International Corporate Showroom & Experience Center" in Youngstown); Defendant's agents traveled to Ohio in direct connection with the claims at issue, including the January 13, 2026 meeting between the Parties' respective CEOs at Plaintiff's Youngstown headquarters to discuss trademark and copyright claims; and

13

(4:25-CV-02659)

that the injuries caused by Defendant (*e.g.*, consumer confusion, diversion of goodwill, and harm to Plaintiff's intellectual-property rights) are felt most acutely in Ohio.  *See* ECF No. 21 at PageID ##: 275, 283–86.  Plaintiff also argues that venue is independently proper under 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant. *See* ECF No. 21 at PageID #: 275.

* * *

The Court finds that Plaintiff has made a *prima facie* showing of proper venue in accord with 28 U.S.C. § 1391(b)(2).  When allegedly infringed rights originated in a judicial district, a substantial part of the relevant infringing events necessarily occurred therein.  *See CompuServe,* 89 F.3d at 1267; ECF No. 21 at PageID ##: 283–86.  In this case, the intellectual-property rights at issue were conceived, developed, finalized, and publicly launched from Plaintiff's Youngstown headquarters.  The distribution partnership through which Defendant embedded its products into American commerce for over two decades was centered in this district, forming the context in which Defendant allegedly copied the Paloma design.  *See* ECF No. 21 at PageID ##: 283–86.  Defendant's CEO personally traveled to Youngstown on January 13, 2026 to meet with Plaintiff's CEO to discuss the very dispute now before the Court—a meeting that, while potentially inadmissible at trial under Fed. R. Evid. 408, need not be ignored simply because it post-dates the verified Complaint.[2]  *See* ECF No. 21 at PageID #: 284; Todd David Peterson, *The Timing of Minimum Contacts After Goodyear and Mcintyre*, 80 Geo. Wash. L. Rev. Arguendo 1,

---

[2] While the Sixth Circuit has not weighed in on the relevance of post-filing contacts, this meeting is analogous to numerous other forum-state meetings throughout the Parties' twenty-year relationship, thereby providing additional—albeit unnecessary—support for specific personal jurisdiction.  *See HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 971 (N.D. Ohio 2014)

14

(4:25-CV-02659)

34 (2011) ("[S]ince the Supreme Court has held that the Due Process Clause does not protect a defendant from the burden of litigating in a forum . . . but rather from having a judgment entered against it by a court that lacks jurisdiction, the relevant time period for determining these contacts would remain the date on which the court decided the motion to dismiss for lack of personal jurisdiction").  Finally, the harm caused by Defendant's alleged infringement is likely to be felt most acutely in Ohio.  *See Emerman*, 2014 WL 12588501, at *5.  Defendant's argument that none of its wrongful conduct physically occurred in Ohio misreads the statutory inquiry, which asks where a substantial part of the events *giving rise to the claim* occurred, not where the defendant's specific acts were committed.[3]  *See* 28 U.S.C. § 1391(b)(2).

Even if venue were not proper under 28 U.S.C. § 1391(b)(2), it is independently and alternatively established on two other grounds.  Under 28 U.S.C. § 1391(b)(3), venue is proper in any district where the defendant is subject to personal jurisdiction, and because the Court determined above that it has personal jurisdiction over Defendant, venue is independently proper on this basis.  *See Tobien*, 133 F.4th at 620.  Defendant's rejoinder that personal jurisdiction was not adequately established at the time Plaintiff filed its lawsuit, *see* ECF No. 25 at PageID #: 361, fails for the same reasons its personal jurisdiction challenge fell short.[4]  Venue is also independently proper under 28 U.S.C. § 1400(a) with respect to Plaintiff's copyright infringement claim, which authorizes suit in any district where the defendant resides or may be

---

[3] This argument also elides the real harm to Plaintiff, if proven.  Because Plaintiff is headquartered in Ohio, an act initiated in Mexico triggers a harm in Ohio.

[4] Even if the January 2026 CEO meeting is excluded from the analysis, Plaintiff has sufficiently established that Defendant directed its business activities toward and conducted its business activities through Ohio by way of its many activities sustaining the long-standing exclusive distributorship and continuing commercial relationship centered in Ohio.

15

(4:25-CV-02659)

found.  Because Defendant is subject to personal jurisdiction in this district, it resides and may be found here for 28 U.S.C. § 1400(a) purposes.  Defendant's circular argument that 28 U.S.C. § 1400(a) venue fails for lack of personal jurisdiction is unavailing.

### C.  *Transfer*

Even when venue is proper, however, a district court may transfer a civil action to any other district where it might have been brought for the convenience of parties and witnesses and in the interest of justice.  *See* 28 U.S.C. § 1404(a).  Similarly, "[u]nder the common law doctrine of *forum non conveniens*, a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue."  *Rustal Trading US, Inc. v. Makki*, 17 Fed. Appx. 331, 335 (6th Cir. 2001).  Yet courts are commanded to give significant deference to a plaintiff's chosen forum under *Koster v. American Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947).  When evaluating a motion to transfer, courts "must weigh a number of case-specific factors such as the convenience of parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading the interest of justice."  *Kerobo v. S.W. Clean Fuels, Corp.,* 285 F.3d 531, 537 (6th Cir. 2002).  Unless the balance of factors strongly favors the defendant, the plaintiff's choice of forum must remain undisturbed.  *See id.*  When a valid forum-selection clause applies, however, the analysis changes: a plaintiff's choice of forum merits no weight and a court does not consider the parties' private interests.  *See Atl. Marine Const. Co.,* 571 U.S. at 63–64.  A valid forum-selection clause is entitled to controlling weight in all but the most exceptional cases.  *See id.*; *VCST Int'l B.V. v. Borgwarner Noblesville, LLC*, 142 F.4th 393, 400 (6th Cir. 2025).

\* \* \*

16

(4:25-CV-02659)

As an alternative to dismissal, Defendant asks the Court to transfer this action to the Northern District of Texas under a forum-selection clause in the parties' Letter Agreement and 28 U.S.C. § 1404(a).  *See* ECF No. 15 at PageID #: 159–61.  Defendant contends the clause's broad "arising out of" or "relating to" language encompasses Plaintiff's intellectual-property claims because the Letter Agreement expressly governs trademark and trade name use during and after the distribution relationship, and because the Paloma dispute arose in the context of that relationship's dissolution.  *See* ECF No. 15 at PageID #: 161.

Plaintiff rejoins that Defendant's request for a transfer should be denied because the forum-selection clause in the Letter Agreement does not apply to the dispute at issue.  *See* ECF No. 21 at PageID #: 276.   Plaintiff contends none of its claims arise out of or relate to the Letter Agreement because its lawsuit raises no breach of contract claims that would invoke the forum selection clause.  Also, all claims arise from Plaintiff's claims of copyright and trademark infringement based on Plaintiff's independently created and registered intellectual property. Even the Distribution Agreement regards only the use and protection of *Defendant's* Tradenames and Trademarks, not Plaintiff's.  *See* ECF No. 20–1 at PageID #: 212, ¶ 9 and 218–19, ¶ 13. Plaintiff further argues that, even if the forum-selection clause applied, all four 28 U.S.C. § 1404(a) transfer factors favor adjudication in this district.  *See* ECF No. 21 at PageID #: 277. Finally, Plaintiff argues that venue over the copyright claim is independently proper under 28 U.S.C. § 1400(a), which permits litigation in any district in which the defendant is subject to personal jurisdiction.  *See* ECF No. 21 at PageID #: 278.

\* \* \*

As to Defendant's request to transfer this action to the Northern District of Texas under the forum-selection clause in the parties' 2025 Letter Agreement and 28 U.S.C. § 1404(a), *see*

17

(4:25-CV-02659)

ECF No. 15 at PageID #: 159–61, the threshold question is whether the forum-selection clause applies to the claims asserted.  See *Bracken*, 954 F. Supp. 2d at 697.  That answer is no, rendering the clause impotent.  Plaintiff asserts, *inter alia*, claims for copyright infringement under 17 U.S.C. § 501 and trademark infringement under 15 U.S.C. § 1125, statutory causes of action independent of any contractual relationship between the parties.  See ECF No. 1 at PageID #: 9–12.  Those claims are grounded in Plaintiff's ownership of intellectual property allegedly developed independently of any agreement— extant or expired—with Defendant.  See ECF No. 21 at PageID #: 283–86.  The Letter Agreement does not purport to govern the ownership, creation, or independent use of Plaintiff's *own* intellectual property, nor does resolution of Plaintiff's claims require contractual enforcement.

Defendant's argument that the Distribution Agreement's trademark assignment brings Plaintiff's claims within the forum-selection clause fails  because that contract governs only Plaintiff's use of Defendant's marks, not Defendant's alleged copying of Plaintiff's internally created and registered intellectual property.  Defendant acknowledges the Complaint does not invoke the contract as the basis for any cause of action.  See ECF No. 25 at PageID #: 358.  Extending the clause to encompass federal copyright and trademark claims would improperly convert a wind-down agreement into a universal forum-selection provision for all future inter-Party litigation.

Even setting aside the clause's inapplicability, all transfer factors favor adjudication in this District because: (1) the Paloma design was created here and Plaintiff's witnesses and records are located here; (2) Defendant has identified no witnesses or documents in Texas with any meaningful connection to the dispute, and Defendant's only United States presence is a Texas-registered non-sales subsidiary; (3) the operative facts are centered in Ohio; and (4)

18

(4:25-CV-02659)

Defendant cannot credibly claim that litigating here presents an extraordinary burden, having travelled here so often to its benefit over the past two decades.  Finally, venue over Plaintiff's copyright claim is independently proper in this district under 28 U.S.C. § 1400(a), which itself forecloses transfer of (at least) the copyright claim to Texas.  *See Symbolstix*, 152 F. Supp. 3d at 1037.

### IV. CONCLUSION

For the foregoing reasons, Defendant Anfora International, S. de R.L. de C.V.'s Motion to Dismiss (ECF No. 15) is denied.  Plaintiff Steelite International U.S.A., Inc.  has made the requisite *prima facie* showing of personal jurisdiction, proper venue, that the forum-selection clause does not apply to Plaintiff's intellectual-property claims, and that the balance of factors favors retention in the Northern District of Ohio.  The Court will resolve Plaintiff's pending Motion for a Preliminary Injunction (ECF No. 4) in a separate writing.

IT IS SO ORDERED.

April 24, 2026
Date

*/s/ Benita Y.  Pearson*
Benita Y.  Pearson
United States District Judge

19